1  FELDESMAN TUCKER LEIFER FIDELL LLP
   KATHRYN E. DOI, SBN 121979
2  kdoi@ftlf.com
   VICTORIA A. FELT SBN 318014
3  vfelt@ftlf.com
   400 Capitol Mall, Suite 2580
4  Sacramento, California 95814
   Telephone: (916) 500.0755
5  Facsimile:  (916) 500.0478

6  Attorneys for Plaintiff
   VENICE FAMILY CLINIC
7

8           UNITED STATES DISTRICT COURT

9           CENTRAL DISTRICT OF CALIFORNIA

10 VENICE FAMILY CLINIC,                    Case No.

11          Plaintiff,                      **COMPLAINT**

12     v.

13 THE UNITED STATES SMALL
   BUSINESS ADMINISTRATION;
14 ISABELLA CASILLAS GUZMAN, in her
   official capacity as administrator of the
15 Small Business Administration; and
   THE UNITED STATES OF AMERICA,
16
            Defendants.
17

18

19      Plaintiff Venice Family Clinic ("VFC" or "Plaintiff"), by and through its

20 counsel of record, for its claims for relief against Defendants United States

21 Small Business Administration ("SBA"), Isabella Casillas Guzman in her

22 official capacity as Administrator of the SBA, and the United States of America,

23 states and alleges as follows:

24 **I.     INTRODUCTION AND NATURE OF THE ACTION**

25      1.     Plaintiff was a borrower under the SBA's Paycheck Protection

26 Program ("PPP") Loan Program.   Plaintiff borrowed approximately $6.67

27 million in funds, via Comerica Bank, on the basis of Plaintiff meeting certain

28 eligibility criteria for the PPP Loan Program, including demonstrating that it

had payroll costs in 2019. The $6.67 million figure was, per PPP Loan Program design, calculated as 2.5 times Plaintiff's average monthly payroll costs in 2019.

2. Plaintiff's loan was approved, and the funds were distributed to Plaintiff on May 8, 2020, by Comerica Bank, with the loan guaranteed by the SBA. So long as Plaintiff was eligible for the loan and Plaintiff subsequently expended the funds on certain categories of permissible expenditures between May 8, 2020, and October 22, 2020, the loan was to be forgiven.

3. Upon application for loan forgiveness, the SBA denied Plaintiff's loan forgiveness.

4. The SBA improperly concluded, first by an initial administrative determination and then through an SBA Office of Hearings and Appeals ("OHA") decision, that Plaintiff was ineligible to receive a PPP loan, because Plaintiff lacked "payroll costs." In general, SBA concluded that Plaintiff lacked "employees" for purposes of demonstrating "payroll costs" because Plaintiff acquires its employees via a relationship with the University of California, even though it was undisputed that Plaintiff was ultimately responsible for paying the salaries and benefits of the employees. More specifically, the SBA OHA concluded that the only permissible mechanism for Plaintiff to demonstrate "employees" was production of an Internal Revenue Service ("IRS") Form 941 in its own name, or an IRS Form 941, Schedule R, filed by the University of California, on which Plaintiff was listed.

5. This action challenges the SBA OHA's final determination (the "Final Decision"), which became a final agency action on November 19, 2022, pursuant to 5 U.S.C. § 702 and requests appropriate relief.

6. The SBA erred in its conclusion that Plaintiff lacked "employees" and "payroll costs" for PPP Loan Program purposes and therefore erred in

/ / /

denying Plaintiff's PPP Loan Program loan forgiveness.  The SBA's unlawful conclusion entails four key errors.

7.     First, SBA OHA's Final Decision adopts an erroneously narrow definition of "employee" that is inconsistent with the PPP Loan Program statute, regulatory implementation, and guidance, as well as longstanding SBA precedent in defining "employees" for SBA program eligibility purposes. Applicable law and precedent define "employees" based upon substantive factors of control and oversight of personnel, taking into account common law standards of employment.  Contrary to the applicable legal framework, SBA concluded that an employment relationship must be established and evidenced exclusively through the borrower producing an IRS Form 941 in its own name or demonstrating that is specifically listed on another entity's IRS Form 941, Schedule R.

8.     Second, SBA OHA erroneously concluded that SBA guidance, in the form of two question and answer-type documents (below referred to as FAQ #10 and Q&A #6) created a requirement that "employees" must be evidenced exclusively by a Form 941 in the borrower's own name or on another entity's Schedule R listing the borrower, despite both guidance documents expressly stating (consistent with law and longstanding SBA policy) that other evidence of employee payroll costs is permissible beyond those specific tax documents.

9.     Third, by relying on a strawman argument that Plaintiff never made, SBA OHA concluded in material part that a Form 941 or Schedule R must be required of Plaintiff because the SBA OHA lacked authority to invalidate FAQ #10 and Q&A #6, although Plaintiff never argued for invalidation of either FAQ #10 and Q&A #6, and, in fact, a plain reading of FAQ #10 and Q&A# 6, which are both consistent with law and longstanding SBA policy, supports Plaintiff's argument that the loan should be forgiven.

10.    Fourth, despite erroneously concluding that Plaintiff's ability to produce a Form 941 in its own name or another entity's Schedule R listing it was critical to the case before it, SBA OHA's interpretation of two letters from the University of California is inconsistent with the substance of the letters. The letters stated the University would work with Plaintiff to potentially produce revised Schedule Rs listing Plaintiff's employees, but the SBA OHA concluded that the University had declined to provide amended tax documents.

11.    The SBA now considers Plaintiff's loan payment to be past due, pursuant to a "final notice of delinquency" sent to Plaintiff through the SBA's payment portal on April 6, 2023.  The portal shows that Plaintiff's PPP Loan Program loan is "in liquidation" and has an outstanding balance of approximately $6.67 million.

12.    For the reasons described above and further set forth below, Plaintiff asks, pursuant to 5 U.S.C. §§ 702, 703, and 706, that this Court set aside the SBA OHA's Final Decision to deny Plaintiff's loan forgiveness, as that decision is arbitrary, capricious, contrary to law, and an abuse of discretion.

13.    As also set forth further below, Plaintiff requests, pursuant to 5 U.S.C. §§ 702, 703, and 706, that this Court declare that the definition of "employee" for purposes of establishing "payroll costs" under the PPP Loan Program includes individuals "employed on [an] other basis," consistent with the plain language of the statute, SBA regulations, and longstanding SBA policy.  Consistently, Plaintiff requests that this Court set aside the SBA OHA's Final Decision and remand the matter to the SBA for action consistent with that declaratory judgment.

/ / /

/ / /

## II.    PARTIES

14.    Plaintiff VFC is a non-profit corporation providing community-based primary and preventive health care and related services to medically underserved communities.   VFC owns and operates numerous clinical, administrative, and operational sites at which it provides treatment to underserved persons in the areas of Venice, Santa Monica, Mar Vista, and Inglewood, California, as well as other nearby California communities.

15.    Defendant SBA is an independent federal agency created and authorized under 15 U.S.C. § 633, *et seq.*   As enacted through the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), the SBA administers the PPP Loan Program pursuant to 15 U.S.C. §§ 636(a) and 636m.  The SBA is a proper defendant in this Administrative Procedure Act ("APA") action.  5 U.S.C. § 702.

16.    Defendant Isabella Casillas Guzman is the Administrator of the SBA and is sued only in her official capacity.   Administrator Guzman is the officer with final authority for administering the PPP Loan Program within the SBA and is thus a proper defendant in this APA action.  5 U.S.C. § 702.

17.    Defendant United States of America is a proper defendant in this APA action.  5 U.S.C. § 702.

## III.    JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702.   The matter in controversy involves interpretation of federal law in a federal program and seeks remedies impacting a federal agency, as well as the public official that serves as the head of that federal agency.   Further, it is brought pursuant to the judicial review provision of the APA.

19.    The SBA decision for which Plaintiff seeks judicial review is a final agency action as required by 5 U.S.C. § 704.  On or about October 20, 2022,

the SBA OHA issued an "initial decision," which by operation of law under SBA regulations became a final agency decision thirty days later on or about November 19, 2022.  13 C.F.R. § 134.1211(b).  SBA regulations provide that the final decision "may be appealed to the appropriate Federal district court only." 13 C.F.R. § 134.1211(g).

20.    This Court has personal jurisdiction over the SBA, which is a federal agency that conducts business within this judicial district.  The SBA has an office at 312 N. Spring Street, Los Angeles, California.

21.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1).  The SBA has an office within this judicial district at 312 N. Spring Street, Los Angeles, California.  Plaintiff conducts its business in this judicial district.  Plaintiff received the PPP loan in this judicial district, expended all PPP loan funds for operations carried out in this judicial district, and applied for loan forgiveness from its offices in this judicial district.

**IV.    STATUTORY AND REGULATORY BACKGROUND**

**A. PPP Loan Program**

22.    On March 27, 2020, the CARES Act (Pub. L. 116-136) was enacted to provide emergency assistance, health care, and economic support for individuals, families, and businesses affected by the coronavirus pandemic.   Among other things, the CARES Act established the SBA-administered PPP Loan Program.

23.    The PPP Loan Program evolved via additional legislation. *See, e.g.*, Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139); Paycheck Protection Program Flexibility Act (Pub. L. 116-142); PPP Extension Act of 2021 (Pub. L. 117-6).[1]

---

[1] On December 27, 2020, additional PPP Loan Program loans were authorized by further amendment to the PPP Loan Program statute as "Second Draw

1

2       24.    Over time, the SBA also issued various implementing rules, which

3   culminated in the Interim Final Rule on Loan Forgiveness Requirements and

4   Loan Review Procedures, *as amended by* the Economic Aid Act (86 Fed. Reg.

5   8283, Feb. 5, 2021).

6       25.    The PPP Loan Program is administered by the SBA as one of

7   various SBA loan programs under 15 U.S.C. § 636(a), commonly referred to

8   as "SBA section 7(a) loans." *See* Pub. L. 85-536 (Jul. 18, 1958) (as amended)

9   (enacting 15 U.S.C. § 636); *see also* 13 C.F.R. § 120.1 (describing section

10  7(a) loans as those authorized under 15 U.S.C. § 636(a) and as a subcategory

11  of SBA business loans).

12      26.    The CARES Act established the PPP Loan Program by adding

13  subparagraph (36) to 15 U.S.C. § 636(a).   Section 636(a)(36)(A) authorized

14  certain eligible lenders to issue PPP loans to eligible entities, which loans

15  would be guaranteed by the SBA pursuant to § 636(a)(36)(B).   Unlike other

16  section 7(a) loans for which guarantee is generally capped at 75 or 85 percent,

17  PPP loans were to be guaranteed at 100 percent.   15 U.S.C. § 636(a)(2)(A)

18  and (F); *see also* 13 C.F.R. § 120.210.

19      27.    Most 7(a) loan programs exclude nonprofit borrowers.    *See*

20  *generally* 15 U.S.C. § 636(a) (limiting borrowers to "business concerns,"

21  defined at 13 C.F.R. § 121.105(a) as "a business entity organized for profit,

22  with a place of business in the United States . . ."); *see also* 13 C.F.R.

23  § 120.100 (limiting SBA business loan eligibility to businesses "organized for

24  profit," "located in the United States," and "small under the size requirements

25

26  PPP loans."   *See* Forgiveness and Loan Review IFR (citing Economic Aid to

27  Hard-Hit Small Businesses, Nonprofits and Venues Act (Economic Aid Act)

28  (Pub. L. 116-260)).   The PPP Loan Program loan at issue in this case is a
    "First Draw loan."   Plaintiff only borrowed under a single First Draw loan.

of [13 C.F.R.] part 121."); Interim Final Rule on Loan Forgiveness Requirements and Loan Review Procedures, *as amended by* the Economic Aid Act (86 FR 8283, Feb. 5, 2021).

28.    The PPP Loan Program statute broadened borrower eligibility requirements for the PPP Loan Program by expressly including eligibility for a "nonprofit organization" that "employs not more than . . . 500 employees."  15 U.S.C. § 636(a)(36)(D)(i)(I).  The definition of "employee" is addressed further below.

29.    To qualify for a PPP Loan Program loan, a borrower must have (i) been an eligible entity type, (ii) been in operation as of February 15, 2020; and (iii) submitted an application certifying that the loan request was necessary to support its ongoing operations and that the funds would be used to retain workers, maintain payroll, and/or make mortgage payments, lease payments, or utility payments. 15 U.S.C. § 636(a)(36)(D), (F), (G). The maximum amount of the loan for which a borrower was eligible was capped at 2.5 times average monthly payroll costs, measured as average monthly payroll costs in 2019 (as was the case for Plaintiff) or an alternative base period not relevant here. 15 U.S.C. § 636(a)(36)(E).

30.    PPP Loan Program borrowers were to apply via participating commercial lenders and the SBA would guarantee approved loans.  15 U.S.C. § 636(a)(36)(B).

31.    PPP Loan Program funds were disbursed via private lenders with the possibility that the loans would be entirely forgiven for borrowers, with the loans being paid off by SBA.  The process by which the SBA paid off the loans is termed "purchase of the guarantee."  15 U.S.C. § 636m(c).

32.    Specifically, PPP loans made to eligible borrowers qualify for full forgiveness, if, during a certain 8- to 24-week period following loan disbursement: (1) employee count and compensation levels were maintained

at certain pre-pandemic levels, and (2) the loan proceeds were spent at least 60 percent on payroll costs and certain other operational expenses. 15 U.S.C. § 636m, 85 Fed. Reg. 20,811, 20,813-14 (Apr. 15, 2020).

33.    The SBA does not have discretion to deny loan forgiveness for eligible borrowers who meet forgiveness qualifications.  Rather, the PPP Loan Program statute directs, "[a]n eligible recipient *shall* be eligible for forgiveness of indebtedness on a covered loan in an amount equal to [its use of the loan proceeds on the eligible costs described above]." (Emphasis added.) 15 U.S.C. § 636m(b).

34.    To seek PPP Loan Program loan forgiveness, the borrower must submit an application demonstrating it met statutory forgiveness qualifications. 15 U.S.C. § 636m(e). The application is reviewed by the private lending institution (in this case, Comerica Bank) which must render a decision within 60 days of receipt of a loan forgiveness application.  15 U.S.C. § 636m(g).

35.    Under the Interim Final Rule on Loan Forgiveness Requirements and Loan Review Procedures (86 FR 8283, Feb. 5, 2021), the SBA has the authority to review any PPP loan of any size at any time.  The interim final rule consolidated prior rules relating to forgiveness and reviews of PPP loans and incorporated changes made by the Economic Aid Act (Dec. 27, 2020) (Pub. L. 116-260.)

**B. PPP Loan Program Statutory Definition of "Employee" and Relevant SBA Rules**

36.    The PPP Loan Program statute defines "employees" for purposes of determining whether certain entities were eligible under the 500-employee limit described in paragraph 28 above.   Specifically, § 636(a)(36)(D)(v) provides: "For purposes of determining whether a business concern, nonprofit organization … . . .  employs not more than 500 employees under clause (i)(I), or for purposes of determining the number of employees of a … business

concern or organization made eligible for a loan under this paragraph . . . the term "employee" includes individuals employed on a full-time, part-time, or other basis."

37.    No other provision within the PPP Loan Program statute defines "employee."

38.    The above PPP Loan Program statutory definition of "employee" uses the same language as the SBA's long-existing definition of "employee" for SBA 7(a) loan eligibility purposes. Specifically, 13 C.F.R. § 121.106(a) provides: "In determining a concern's number of employees, SBA counts all individuals employed on *a* full-time, part-time, or other basis.  This includes employees obtained from a temporary employee agency, professional employee organization or leasing concern.  SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern. . ."

39.    Pursuant to 13 C.F.R. § 120.100(d), the size standards of 13 C.F.R. Part 121 apply to SBA business loan program size determinations, including 7(a) loan programs such as the PPP Loan Program.

40.    To further clarify the definition of "employee" for purposes of SBA size determinations, the SBA issued SBA Size Policy Statement No. 1 in the federal register on February 20, 1986. 51 Fed. Reg. 6099 (Feb. 20, 1986).

41.    SBA Size Policy Statement No. 1 remains in effect and embodies the SBA's current policy on the meaning of "employed on [an] other basis" for purposes of determining an employment relationship.  As recently as June 6, 2022, SBA issued a Final Rule relating to calculation of employee numbers that specifically references SBA Size Policy Statement No. 1 as setting applicable standards.  *See* 87 Fed. Reg. 34094-01 (June 6, 2022) ("SBA counts all individuals employed on a full-time, part-time, or other basis. This includes employees obtained from a temporary employee agency,

professional employee organization or leasing concern (see 13 CFR 121.106). In SBA Size Policy Statement No. 1, 51 FR 6099, SBA further clarified that the 'other basis' ground reaches situations where the firm artificially reduces its number of employees to meet the size standards and qualify for SBA's assistance.").

42.    Size Policy Statement No. 1: (i) takes into account common law standards of employment, and (ii) states that individuals whose services were procured through an employment contractor maybe considered "individuals employed on . . . [an] other basis" under 13 CFR 121.2(b) (now codified at 13 CFR 121.106) and counted as part of the business' number of employees even if the personnel would be considered employees of the employment contactor under common law principles. 51 Fed. Reg. 6100 (Feb. 20, 1986). In the latter context, Size Policy Statement No. 1 instructs that the key inquiry is "the question of whether an employer is deriving the usual benefits incident to employment of such individuals," and calls for evaluation of the "totality of the circumstances," setting forth specific factors to be considered for purposes of determining which entity is the employer for SBA purposes.  51 Fed. Reg. 6100.  The factors emphasize questions focused on which entity selects the employees, has the power to dismiss the employees, and maintains supervisory authority over the employees.  *See id.*

### C. PPP Loan Program Definition and Calculation of "Payroll Costs"

43.    The PPP Loan Program statute defines "payroll costs" for both original loan eligibility and loan forgiveness purposes as "the sum of payments of any compensation with respect to employees that is a . . . salary, wage, commission, or similar compensation" including tips and certain fringe benefits.  15 U.S.C. §§ 636(a)(36)(A)(viii) (setting forth the definition for loan eligibility) and 636m(a)(12) (adopting the same definition for loan forgiveness).

44.    From April 2, 2020, through July 30, 2021, SBA issued various implementing final rules in the federal register relating to the PPP Loan Program, which were subsequently consolidated into a single final rule.  *See* Interim Final Rule on Loan Forgiveness Requirements and Loan Review Procedures, which incorporated amendments from the Economic Aid Act (86 FR 8283, Feb. 5, 2021).

45.    The SBA also published Frequently Asked Questions ("FAQ") relating to PPP loans on April 6, 2020, which were updated frequently from June 25, 2020 through July 8, 2022, as reflected in the text of the FAQ documents and as listed on the SBA's webpage.  *See* SBA website, "All Versions List" at https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

46.    The FAQ document specifically stated that it served as "guidance" that borrowers and lenders could rely on to assist with the SBA's "interpretation" of the CARES Act and of the PPP Interim Final Rules. On its face, the FAQ document states it is "NOT BINDING."

47.    FAQ #10 addressed the following question: "What if an eligible borrower contracts with a third-party payor such as a payroll provider or a Professional Employer Organization (PEO) to process payroll and report payroll taxes?"

48.    The answer listed for FAQ #10 stated:

"**Answer**: SBA recognizes that eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer Identification Number (EIN) of the PEO or other payroll provider. In these cases, payroll documentation provided by the payroll provider that indicates the amount of wages and payroll taxes reported to the IRS by the payroll provider for the borrower's employees will be considered acceptable PPP loan payroll documentation. Relevant information from a Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers,

attached to the PEO's or other payroll provider's Form 941, Employer's Quarterly Federal Tax Return, should be used if it is available; otherwise, the eligible borrower should obtain a statement from the payroll provider documenting the amount of wages and payroll taxes. In addition, employees of the eligible borrower will not be considered employees of the eligible borrower's payroll provider or PEO."

49.    On June 26, 2020, the SBA issued a document entitled "How to Calculate Maximum Loan Amounts- By Business Type" available at https://home.treasury.gov/system/files/136/How-to-Calculate-Loan-Amounts.pdf.

50.    Relevant to this action, the guidance document sets forth a series of questions and answers, including SBA Q&A #6, which provides a formula to determine how a 501(c)(3) non-profit entity should calculate its PPP Loan Program loan eligibility amount.

51.    SBA Q&A #6 stated as follows:

"Question: How is the maximum PPP loan amount calculated for eligible nonprofit organizations (up to $10 million)? (Note that PPP loan forgiveness amounts will depend, in part, on the total amount spent during the 24-week period following the first disbursement of the PPP loan.)

Answer: The following methodology should be used to calculate the maximum amount that can be borrowed for eligible nonprofit organizations . . . :

• Step 1: Compute 2019 payroll costs by adding the following:

o 2019 gross wages and tips paid to your employees whose principal place of residence is in the United States, which can be computed using 2019 IRS Form 941 Taxable Medicare wages & tips (line 5c-column 1) from each quarter plus any pre-tax employee contributions for health insurance or other fringe benefits excluded from Taxable Medicare wages & tips, subtracting any amounts paid to any individual employee in excess of $100,000 and any

amounts paid to any employee whose principal place of residence is outside the U.S;

o 2019 employer health insurance contributions (portion of IRS Form 990 Part IX line 9 attributable to health insurance);

o 2019 employer retirement contributions (IRS Form 990 Part IX line 8); and

o 2019 employer state and local taxes assessed on employee compensation, primarily state unemployment insurance tax (from state quarterly wage reporting forms).

• Step 2: Calculate the average monthly payroll costs (divide the amount from Step 1 by 12).

• Step 3: Multiply the average monthly payroll costs from Step 2 by 2.5.

• Step 4: Add the outstanding amount of any EIDL made between January 31, 2020 and April 3, 2020 that you seek to refinance, less the amount of any advance under an EIDL COVID-19 loan (because it does not have to be repaid). The nonprofit organization's 2019 IRS Form 941 and state quarterly wage unemployment insurance tax reporting form from each quarter (or equivalent payroll processor records or IRS Wage and Tax Statements), along with the filed IRS Form 990 Part IX or other documentation of any retirement and health insurance contributions, must be provided to substantiate the applied-for PPP loan amount. A payroll statement or similar documentation from the pay period that covered February 15, 2020 must be provided to establish you were in operation and had employees on that date. . . .

## V.   FACTUAL BACKGROUND

### A. Plaintiff's Circumstances and PPP Loan Application

52.   Pursuant to Section 330 of the Public Health Service Act (42 U.S.C. § 254b), Plaintiff operates as a Community Health Center ("CHC"), funded in part by federal grants.   Plaintiff owns and operates numerous community clinical, administrative, and operational sites, at which it provides

1  treatment to certain underserved patient populations in the areas of Venice,
2  Santa Monica, Mar Vista, Inglewood, and other nearby communities.

3       53.   To efficiently obtain the necessary staff capacity needed to
4  operate its clinic sites, Plaintiff, beginning in or around 1979, entered into an
5  agreement with the University of California ("University") via the University's
6  Los Angeles campus, commonly known as UCLA, under which, among other
7  things, Plaintiff acquires its personnel.

8       54.   On April 17, 2020, Plaintiff applied for a PPP loan through
9  Comerica Bank totaling approximately $6.67 million.  In a cover letter to its
10 loan application, Plaintiff explained that its employees are engaged via an
11 arrangement with the University as employees "employed on [an] other basis"
12 as contemplated in Section 1102 of the CARES Act and 13 C.F.R. § 121.106,
13 and that Plaintiff reimburses the University for the salaries and benefits of
14 these employees by incurring the payroll costs at "actual costs" and then
15 remitting "at cost" reimbursement to the University.

16      55.   Plaintiff's loan application was approved, and the loan was
17 disbursed to Plaintiff on or about May 8, 2020.

18      56.   Pursuant to 15 U.S.C. § 636(m) and the SBA's specific instructions
19 on "PPP Loan Forgiveness" available on the SBA's website, Plaintiff's "loan
20 covered period," *i.e.* the period under which it was required to expend the loan
21 proceeds on certain types of costs to be eligible for loan forgiveness, was May
22 8 to October 22, 2020.  During this period, Plaintiff incurred costs eligible for
23 forgiveness in amounts and ratios meeting—and exceeding—those
24 prescribed by the PPP Loan Program statute and rules, in particular: (i)
25 $9,171,787.53 million in payroll costs, (ii) $201,057.94 in business rent, and
26 (iii) $192,169.27 in utility expenses.
27 / / /
28 / / /

**B. Plaintiff's Loan Forgiveness Application**

57.   On or about July 27, 2021, Plaintiff submitted its PPP Loan Forgiveness Application through Comerica Bank.

58.   On or about September 2, 2021, Comerica Bank approved Plaintiff's loan forgiveness application and sent that decision to the SBA.

59.   On or about November 4, 2021, the SBA requested additional information from Plaintiff via Comerica Bank.  Specifically, on November 4, 2021, the SBA requested that Plaintiff supply the following information: (i) the operating agreement between Plaintiff and the University, (ii) Plaintiff's 2019 IRS Form 941s and California quarterly wage unemployment insurance tax reporting forms for each quarter to substantiate the applied-for PPP loan amount; (iii) Plaintiff's third-party payroll report from 2019 for all employees earning over $100,000; and (iv) Plaintiff's-third party payroll report for all employees employed during Plaintiff's loan covered period.

60.   On or about November 22, 2021, Plaintiff replied to the SBA's request with a 10-page cover letter and 11 enclosures.  In the cover letter, Plaintiff again described how its personnel are employees "employed on [an] other basis" for purposes of the PPP Loan Program statute.  Further, Plaintiff explained that under the instructive factors of SBA Size Policy Statement No. 1, its personnel serve as Plaintiff's employees because, among other factors, they are selected by Plaintiff, Plaintiff pays employee wages and fringe benefits by "at cost" reimbursement to the University, Plaintiff has the ability to remove the employees from its workplace, and Plaintiff's personnel supervise the employees.

61.   Plaintiff's reply included (i) a copy of the operating agreement between the University and Plaintiff; (ii) the University's California wage unemployment insurance tax reporting forms from each quarter of 2019 as well as documentation of retirement and health insurance contributions;

(iii) the University's IRS Forms 941 showing wages paid for each quarter in 2019; (iv) and a table reflecting the components used to calculate payments due from Plaintiff to the University for the fringe benefit component of the actual costs of Plaintiff's personnel for 2019.

62.    Plaintiff's reply also underscored that its Loan Application and Loan Forgiveness Application included detailed payment data from University payroll reports ("UC Path Reports") and billing data issued monthly to Plaintiff by the University.   The submitted documents showed Plaintiff's average monthly payroll calculation and that Plaintiff incurs the payroll costs at "actual costs," remitting "at cost" reimbursement to the University.

63.    On or about February 16, 2022, Plaintiff received notice of SBA's review decision.   SBA entirely denied loan forgiveness, stating that "the borrower did not have any eligible payroll cost at the time of the loan application."   The SBA reasoned that the University—rather than Plaintiff—was the employer of record because all tax documents that Plaintiff submitted to the SBA were in the name of the University.

**C. Plaintiff's Appeal to the SBA OHA and Collaboration with the University of California to Obtain IRS Form 941 Schedule R Tax Forms**

64.    Plaintiff timely appealed the SBA's denial of loan forgiveness to the OHA pursuant to 13 C.F.R. § 134.1202.

65.    In the course of the appeal, it became apparent from SBA's communications with Plaintiff that SBA viewed the existence of IRS Form 941s in Plaintiff's name, or Form 941 Schedule Rs listing Plaintiff, as essential to an SBA determination that Plaintiff has "employees" for purposes of establishing qualifying PPP Loan Program "payroll costs."

66.    In light of the SBA's focus on IRS Forms 941 and Schedule R, Plaintiff obtained a letter from the University describing the relationship between Plaintiff and the University for IRS Form 941, Schedule R purposes.

67.     In the letter, dated August 15, 2022, the University Controller wrote that her office had reviewed Plaintiff's relationship with the University and "concluded that it would be appropriate under the circumstances for [the University] to include VFC's payroll information on [the University's] Form 941, Schedule R."  The letter also stated that the University would be "happy to work with [Plaintiff] with respect to the administrative logistics and costs that preparing such a Schedule R would entail, which may be significant."  With the concurrence of SBA counsel, the letter was accepted into the OHA's administrative record.

68.     SBA's brief before OHA, filed on September 2, 2022 in response to Plaintiff's appeal, described the August 15 letter from the University in the following way, on pages 7-8: "Appellant submitted to SBA a letter from UCLA to VFC, indicating that in the opinion of UCLA's counsel, on a going forward basis, VFC should be listed entity on UCLA's Form 941 Schedule R.  While this would seemingly address SBA's concerns and render [VFC] eligible for future rounds of PPP funding – the letter does not indicate that UCLA's 941's from the tax year 2020 will be amended.  Therefore, it is at best irrelevant in the Instant Appeal and at worst, an acknowledgement by UCLA and Appellant that such a change was necessary to comply with SBA Rules."

69.     To avoid any doubt about the August 15 letter from the University, Plaintiff obtained a second letter from the University pending the OHA's Final Decision, which was also added to the Administrative Record with SBA counsel's concurrence.

70.     This second letter, dated October 7, 2022, stated: "This letter confirms that the [University] intends to include VFC on the [University's] Form 941R for the 2023 tax year and future tax years." With respect to the retroactive filing of amended Form 941 Schedule Rs for tax years 2019, 2020, 2021 and 2022, the letter stated: "the matter remains under review.  Although

. . . the [University] could have filed a Form 941R including VFC in those periods, [the University is] not yet certain of all the administrative implications and impacts of retroactive filing or amendment at this point.  If retroactive filing or amendment is feasible and will not entail costly additional filings or impacts, we are happy to work with VFC to proceed with doing so."

71.    From January to March 2023, VFC continued to work with the University to reconcile payroll and cost data from prior tax years 2019, 2020, 2021 and 2022.  The University agreed to file amended Form 941 Schedule Rs which would list VFC.  For tax years 2019 and 2020, the retroactive amended forms (which listed VFC) were filed with the IRS on April 19, 2023.

**D. The SBA OHA's Final Decision Denying Plaintiff's Appeal of Loan Forgiveness**

72.    On or about October 20, 2022, the SBA OHA issued an "initial decision," denying Plaintiff's loan forgiveness in its entirety. On or about November 19, 2022, that decision became a final agency action ("Final Decision") pursuant to 13 C.F.R. § 134.1211(b). *See* Final Decision, attached hereto as Exhibit 1.  Aspects of the OHA's Final Decision (Ex. 1) relevant to this action are detailed below.

**1. OHA Conclusion Regarding The Binding Nature of SBA's FAQs**

73.    The Final Decision concluded that the SBA OHA did not possess authority to deviate from the SBA's interpretive guidance in FAQ #10.  *See* Ex. 1, p. 10 ("As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules.").  The Final Decision specifically stated that such discretion should come from "the broadly independent authority of an Article III judge."

74.    Thus, the SBA OHA concluded that it could not invalidate the SBA's interpretation of the CARES Act through FAQ #10 in defining payroll

costs (and the definition of "employee") for the purposes of PPP loan eligibility. *See* Ex. 1, p. 10.

### 2. OHA Conclusions Regarding Definitions of "Payroll Costs" and "Employees" Within the SBA's Own Interpretative Guidance

75.     The Final Decision defined the term "payroll costs," under the CARES Act, as meaning: "(aa) the sum of any compensation with respect to employees that is a – (AA) salary, wage, commission or similar compensation; . . ." *See* Ex. 1, p. 7.

76.     The Final Decision then cited the SBA's publication of Interim Final Rule (IFR) #1, where item 2(f) further defined payroll costs as consisting of: "compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent . . .; payment for vacation, parental, family, medical or sick leave; . . . or similar compensation." *See* Ex. 1, p. 7.

77.     The SBA OHA concluded that the SBA produced FAQs, with the intention that borrowers and lenders could rely on guidance in the document as SBA's interpretation of the CARES Act.   *See* Ex. 1, p. 7.   The FAQs published on April 6, 2020 included FAQ #10, which sought to provide guidance on the following question: "What if an eligible borrower contracts with a third-party payer such as a payroll provider or a Professional Employer Organization (PEO) to process payroll and report payroll tax?"   The SBA's answer to FAQ #10, in part, states that "payroll documentation provided by the payroll provider that indicates the amount of wages and payroll taxes reported to the IRS by the payroll provider for the borrower's employees will be considered acceptable PPP loan payroll documentation." *See* Ex. 1, p. 8.

78.     The SBA OHA's decision also looked to SBA Q&A #6, published April 24, 2020, which sets forth how a non-profit entity should calculate its PPP

loan eligibility amount to define payroll costs.  *See* Ex. 1, p. 12.  SBA Q&A #6 stated, in part, that a "nonprofit organization's 2019 IRS Form 941 and state quarterly wage unemployment insurance tax reporting form for each quarter (*or equivalent payroll processor records* or IRS Wage and Tax Statements), along with the filed IRS Form 990 Part IX *or other documentation…* must be provided to substantiate the applied-for PPP loan amount.  A payroll statement *or similar documentation* from the pay period that covered February 15, 2020 must be provided to establish you were in operation and had employees on that date." (Emphasis added.) *See* Ex. 1, p. 13.

79.    The SBA OHA's Final Decision erred in at least four ways in examining how FAQ #10 and Q&A #6 apply to the arguments set forth in Plaintiff's appeal.

80.    First, the SBA OHA misinterpreted Plaintiff's argument by concluding in its Final Decision that Plaintiff's appeal asserted that FAQ #10 "is inconsistent with the existing SBA 7(a) business loan program rules and the CARES Act."  *See* Ex. 1, p. 8.

81.    Plaintiff's arguments in its SBA OHA appeal sought a correct reading of FAQ #10 and did not assert that FAQ #10 as a whole is "inconsistent with the existing SBA 7(a) business loan program rules and the CARES Act," as SBA OHA erroneously contended. *See* Ex. 1, pp. 6, 8.

82.    Plaintiff's argument focused on the statement in FAQ  #10 that "[r]elevant information from a Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers, attached to the PEO's or other payroll provider's Form 941, Employer's Quarterly Federal Tax Return, *should be used if it is available; otherwise, the eligible borrower should obtain a statement from the payroll provider documenting the amount of wages and payroll taxes*." (Emphasis added). Plaintiff contended that this express language in FAQ #10

/ / /

demonstrates that acceptable PPP loan payroll documentation can be broader than a Form 941 or Schedule R.

83.   Second, the SBA OHA's Final Decision stated that Plaintiff's appeal "challenge[d] the validity" of FAQ #10 where the SBA concluded that payroll records must be "confirmed with IRS Form 941-R (Form 941 or Schedule R)."  *See* Ex. 1, p. 8. The SBA OHA also concluded that it "is not the proper forum for a challenge to the validity of a regulation." *See* Ex. 1, p. 11.

84.   To that end, the SBA OHA denied Plaintiff's PPP Loan Program loan forgiveness appeal in part by determining that the SBA OHA did not have the authority to do what Plaintiff purportedly was asking – to "invalidate" FAQ #10.  By ostensibly ruling on the basis of its lack of authority to invalidate FAQ #10, SBA OHA avoided its obligation to comprehensively apply FAQ #10 to the facts before it.

85.   Third, relating to Q&A #6, the guidance document's express language states (i) that 2019 gross wages and tips paid to employees "can be" computed using 2019 IRS Form 941 Taxable Medicare wages and tips from each quarter; and (ii) that forms provided to substantiate an applied-for PPP loan amount can be an organization's 2019 IRS Form 941 and state quarterly wage unemployment insurance tax reporting forms from each quarter ("or equivalent payroll processor records or IRS Wage and Tax Statements.").

86.   The SBA OHA's Final Decision stated that because Plaintiff did not provide a 2019 IRS Form 941 in its own name, or a Schedule R on which it is listed, the Plaintiff had "failed to document any PPP eligible wages and tips for its employees" under Q&A #6.  *See* Ex. 1, p. 13.

87.   Although the plain language of SBA FAQ #10 and Q&A #6 permit documentation other than a Form 941 to prove qualifying expenses, the SBA OHA did not consider the fact that Plaintiff provided substantial documentation

constituting "a statement from the payroll provider documenting the amount of wages and payroll taxes," "equivalent payroll processor records," "other documentation," or "similar documentation," as described fully in Paragraphs 59-62 above.  Plaintiff's Loan Forgiveness application included enclosures containing substantial source data detailing payroll costs and that SBA never raised any questions about the veracity of that submitted data.

88.    Fourth, the SBA OHA stated that Plaintiff set forth an argument in its briefing papers that "under California law, the pertinent personnel would likely be found to be dual employed by [Plaintiff] and [the University of California]."  *See* Ex. 1, p. 6.

89.    By focusing exclusively on proof of employees via Form 941 or a Schedule R, the SBA OHA's Final Decision failed to provide any analysis of this legitimate basis for defining employees for PPP Loan Program purposes.

### 3. OHA Interpretation of Supporting Documentation from the University of California

90.    The SBA OHA's decision failed to adequately consider the August 15, 2022, and October 7, 2022, letters from the University of California in two respects.

91.    First, relating to the August 15 letter, the SBA OHA found that, through the letter, Plaintiff "seeks to utilize already submitted third party payroll documentation as an alternative means to establish the [Plaintiff's] 2019 wages and tips under Q&A 6."

92.    The SBA OHA read Q&A #6 as allowing alternative documentation only when the borrower appears on an IRS Form 941 Schedule R in the first place.    Specifically, the SBA OHA stated, "SBA will allow a PPP applicant/borrower to seek 3rd party payroll documentation only when the applicant/borrower appears on the PEOs IRS Form 941, Schedule R and cannot obtain an "Allocation Schedule"."  *See* Ex. 1, p. 14.

93.   This interpretation of Q&A #6 is inconsistent with its plain language and illogical. The IRS Form 941 Schedule R is the Allocation Schedule.  As a result, SBA OHA improperly failed to consider the valid payroll documentation provided by Plaintiff.

94.   Second, relating to the October 7 letter, the SBA OHA concluded that "the [University has] not included the [Plaintiff] on its IRS Form 941, Schedule R for tax years 2019, 2020, 2021 or 2022" and the University  has "specifically declined to add" Plaintiff to its IRS Form 941, Schedule R.  *See* Ex. 1, p. 14.

95.   The October 7 letter clearly indicates that the University was undertaking a review to determine if it is logistically feasible, from an administrative and cost standpoint, to retroactively amend its tax forms to add Plaintiff.

96.   At no point does the October 7 letter state that Plaintiff would not be included on the forms for previous years or that the University had "specifically declined" to add Plaintiff.  Indeed, after conducting a review as to whether it would administratively be feasible to list Plaintiff on amended Form 941 Schedule Rs for previous tax years, the University opted to take that step – and filed such amended Schedule Rs listing Plaintiff for every quarter in years 2019 and 2020 on April 19, 2023.

**FIRST CAUSE OF ACTION – AGENCY ACTION RELATING TO DEFINITION OF "EMPLOYEE" IS ARBITRARY, CAPRICIOUS, AND CONTRARY TO LAW, 5 U.S.C.§ 706(2)(A), (C)**

97.   The allegations of paragraphs 1 – 96 are incorporated as if fully set forth herein.

98.   The SBA OHA's Final Decision constitutes agency action subject to judicial review under the APA within the meaning of 5 U.S.C. § 702.

99.   The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … not in accordance with law," or "in excess of statutory jurisdiction, authority or limitations, or short of statutory right."  *Id.* § 706(2)(A), (C).

100.  The APA also provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious," or "an abuse of direction." *Id.* § 706(2)(A).

101.  For non-profit borrowers such as Plaintiff, the SBA's Final Decision defines "employees" for purposes of PPP Loan Program "payroll costs" as limited exclusively to individuals for whom the borrower has filed in its own name an IRS Form 941, or for which it is specifically listed on another entity's Form 941 Schedule R.   This aspect of the Final Decision is arbitrary, capricious, contrary to law, and constitutes an abuse of discretion, in that, among other things: (i) the definition of employee stated in the Final Decision is inconsistent with the PPP Loan Program statutory definition of employee which includes employees "employed on [an] other basis", (ii) the definition of employee stated in the Final Decision is inconsistent with the longstanding regulatory definition of employee adopted by the SBA for relevant purposes, which includes employees "employed on [an] other basis", (iii) the definition of employee stated in the Final Decision misapplies the plain language of SBA FAQ # 10 and Q&A # 6, both of which are facially consistent with the statutory and regulatory definitions of employee, which encompass and permit employees "employed on [an] other basis," and (iv) the Final Decision fails to offer any analysis on whether Plaintiff's pertinent personnel would be construed as "employees" under California law.

102.  As a result of the Final Decision's findings, and conclusions that are not in accordance with law, are in excess of statutory jurisdiction, authority or limitations, or short of statutory right, and are arbitrary, capricious, or an

abuse of direction, as set forth above, Plaintiff is wrongfully being deprived of forgiveness of its PPP loan.

**SECOND CAUSE OF ACTION – SBA OHA CONCLUSION THAT A BORROWER MUST HAVE A FORM 941 IN ITS OWN NAME OR BE LISTED ON A 941R TO BE ELIGIBLE FOR A PPP LOAN IS ARBITRARY, CAPRICIOUS, AND CONTRARY TO LAW UNDER FAQ #10 AND Q&A #6, 5 U.S.C. § 706(2)(A)**

103.  The allegations of paragraphs 1- 102 are incorporated as if fully set forth herein.

104.  The SBA OHA's Final Decision constitutes agency action subject to judicial review under APA within the meaning of 5 U.S.C. § 702.

105.  The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … not in accordance with law," or "in excess of statutory jurisdiction, authority or limitations, or short of statutory right."  *Id.* § 706(2)(A), (C).

106.  The APA also provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious," or "an abuse of direction." *Id.* § 706(2)(A).

107.  For non-profit borrowers such as Plaintiff, the SBA's Final Decision held that FAQ #10 and Q&A #6 required that payroll costs be evidenced by a Form 941 in the borrower's own name or a Form 941 Schedule R listing the borrower.  This aspect of the Final Decision is arbitrary, capricious, contrary to law, and constitutes an abuse of discretion, in that: (i) it is inconsistent with the express language of both FAQ #10 and Q&A #6, both of which permit alternative documentation to prove an employment relationship, and (ii) such a construction of the plain language of FAQ #10 and Q&A # 6 would be an unreasonable construction of the PPP Loan Program statute and SBA rules.

108.  As a result of the Final Decision's findings, and conclusions that are not in accordance with law, are in excess of statutory jurisdiction, authority

or limitations, or short of statutory right, and are arbitrary, capricious, or an abuse of direction, as set forth above, Plaintiff is wrongfully being deprived of forgiveness of its PPP loan.

**THIRD CAUSE OF ACTION – SBA OHA'S ULTIMATE CONCLUSION IS ARBITRARY, CAPRICIOUS AND AN ABUSE OF DISCRETION BECAUSE OHA DISPOSED OF PLAINTIFF'S APPEAL ON THE BASIS THAT THE OHA LACKED AUTHORITY TO INVALIDATE FAQ #10 AND Q&A #6, 5 U.S.C. § 706(2)(A)**

109.   The allegations of paragraphs 1-108 are incorporated as if fully set forth herein.

110.   The SBA OHA's Final Decision constitutes agency action subject to judicial review under the APA within the meaning of 5 U.S.C. § 702.

111.   The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … not in accordance with law," or "in excess of statutory jurisdiction, authority or limitations, or short of statutory right."  *Id.* § 706(2)(A), (C). The APA also provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious," or "an abuse of direction." *Id.* § 706(2)(A).

112.   The SBA OHA's Final Decision was arbitrary, capricious, and an abuse of discretion in that it is based in material part on (i) SBA OHA's erroneous conclusion that Plaintiff sought to invalidate FAQ #10 and Q&A #6, and (ii) SBA OHA's related and superfluous conclusion that its inability to invalidate FAQ #10 and Q&A #6 necessitated Plaintiff providing a Form 941 in its own name or a 941 Schedule R on which it was listed.

113.   As a result of the Final Decision's findings, and conclusions that are arbitrary, capricious, or an abuse of direction, as set forth above, Plaintiff is wrongfully being deprived of forgiveness of its PPP loan.

/ / /

**FOURTH CAUSE OF ACTION – THE SBA OHA ABUSED ITS DISCRETION IN MISREADING OR FAILING TO CONSIDER RELEVANT FACTS SET FORTH IN THE UNIVERSITY OF CALIFORNIA LETTERS, 5 U.S.C. § 706(2)(A).**

114.   The allegations of paragraphs 1-113 are incorporated as if fully set forth herein.

115.   The SBA OHA's Final Decision constitutes agency action subject to judicial review under the APA within the meaning of 5 U.S.C. § 702.

116.   The APA provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious," or "an abuse of direction." *Id.* § 706(2)(A).

117.   Even if FAQ #10 and Q&A #6 required an IRS Form 941 or Schedule R, the SBA OHA's Final Decision was arbitrary, capricious, and an abuse of discretion in that it materially misconstrued the evidence before it. In particular, the SBA OHA concluded that the University of California "specifically declined to add" Plaintiff to the University of California's Form 941 Schedule R, when the letters from the University stated (i) the relationship between Plaintiff and the University of California was such that listing Plaintiff on the University's Form 941 Schedule R was appropriate, (ii) the University would commence including Plaintiff on its Form 941 Schedule R moving forward, and (iii) the University would work with Plaintiff to potentially amend Form 941 Schedule Rs from prior years to specifically list Plaintiff.  Indeed, the University did work with Plaintiff to amend Form 941 Schedule Rs from prior tax years and filed those amended forms (which listed Plaintiff) on April 19, 2023, with the IRS.

118.   As a result of the Final Decision's findings, and conclusions that are arbitrary, capricious, or an abuse of direction, as set forth above, Plaintiff is wrongfully being deprived of forgiveness of its PPP loan.

/ / /

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1.      Declare that the SBA OHA Final Decision violates the plain language of the PPP Loan Program statute, 15 U.S.C. § 636(a) *et seq.*; exceeds SBA's statutory authority, 5 U.S.C. § 706(2)(C); and is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, 5 U.S.C. § 706(2)(A);

2.      Declare that the definition of "employee" for purposes of determining payroll costs under the PPP Loan Program statutory definition and SBA's longstanding regulations and policy includes individuals "employed on [an] other basis," as defined by 15 U.S.C. § 636(a)(36)(D)(v) and SBA Size Policy Statement No. 1;

3.      Declare that the SBA may not lawfully limit adequate proof of an employment relationship and the existence of employees for PPP Loan Program loan purposes to IRS Forms 941 in the borrower's name and/or Schedule Rs listing the borrower.

4.      Declare that the SBA may not lawfully interpret its FAQ #10 and Q&A #6 to limit payroll cost support solely to IRS Forms 941 in the borrower's name and/or Schedule Rs listing the borrower and must instead consider Plaintiff's loan forgiveness application based on the facts before it.

5.      Set aside the SBA OHA's Final Decision as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), and remand consideration of Plaintiff's loan forgiveness request to the SBA for action consistent with the PPP Loan Program statute, associated regulations, longstanding SBA guidance, and the facts before it.

/ / /

/ / /

/ / /

1      6.     Provide such other and further relief as this Court may deem

2 necessary, just, and proper.

3

4 DATED:  April 20, 2023        FELDESMAN TUCKER LEIFER FIDELL LLP

5

6

7                   By:      */s/ Kathryn E. Doi*

8                        KATHRYN E. DOI

9                        VICTORIA A. FELT

                       Attorneys for Plaintiff

10                        VENICE FAMILY CLINIC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

# United States Small Business Administration
# Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
APPEAL OF:

**Venice Family Clinic**

       Appellant

Appealed from
SBA PPP Loan No. 6472417201

Issued:  **October 20, 2022**

Decision No. **PPP-6472417201**

Appearances:
      Mindy B. Pava, Feldesman Tucker Leifer Fidell LLP, for the Appellant.
      John Baker, Attorney for the Small Business Administration.

## DECISION

    After carefully considering the evidence and arguments presented in the Administrative Record, the appeal petition of Venice Family Clinic (Appellant) is **DENIED**.  For the reasons discussed below, Appellant is not entitled to loan forgiveness.

## PROCEDURAL HISTORY

    On April 17, 2020, the Appellant (Borrower) submitted a Paycheck Protection Program (PPP) Borrower Application to Comerica Bank (Lender). On April 28, 2020, the Appellant was approved for a PPP loan by the Lender in the amount of $6,672,100.00, and received the loan proceeds.

    The Appellant submitted a PPP Loan Forgiveness Application through the Lender.  On September 2, 2021, the Lender determined the Appellant should receive full loan forgiveness.

    On February 16, 2022, the U.S. Small Business Administration (SBA) Office of Capital Access issued a final PPP loan review decision finding the Appellant ineligible for the PPP loan and any subsequent loan forgiveness.

    On March 17, 2022, the Appellant filed the instant appeal from that final SBA loan review decision.  Appellant argues that the Final SBA Loan Review Decision is clearly erroneous, and requests that the Office of Hearings and Appeals (OHA) reverse it, and find the Appellant is eligible for PPP loan forgiveness.

On May 4, 2022, a Notice and Order was issued requiring the filing of the Administrative Record (AR) by May 25, 2022, providing for the Appellant to file an Objection to the same by June 6, 2022, and allowing for SBA to file a Response to the Petition by June 20, 2022.

On May 25, 2022, the AR was filed.

On June 6, 2022, the Appellant filed an Objection, in which the Appellant states it " does not object to the "absence" of any document from the Administrative Record." The Objection sought to have certain documents re-formatted and redact personally identifiable information (PII) in the form a certain individuals "Drivers License and Social Security Card". Additionally, the Appellant attached three documents for clarification/inclusion in the AR. Review of the AR reflects the same contains all of the documents relied upon by SBA in rendering a final SBA loan review decision. The formatting of the documents in the AR, while challenging, does not preclude the ascertainment of relevant information necessary to argue or decide this matter. As such, the Objection is **OVERRULED**. See 13 C.F.R. § 134.1207(e).

In terms of PII, confidential business and financial information; source selection sensitive information; income tax returns; and other exempt information, the appeal file is not available to the public pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. 552. 13 C.F.R. § 134.205(c). A party in a pending PPP appeal may examine and copy the party's own submissions as well as any information in the appeal file that is not exempt from disclosure under the FOIA. Party access to the appeal file in a pending appeal does not require a FOIA request or a protective order. 13 C.F.R. § 134.205(e). Here, the Borrower is the Appellant and has standing to appeal the final SBA loan review decision for a PPP loan. PPP appeals before OHA do not have opposing private parties. The only parties to a PPP appeal are the Borrower/Appellant and SBA. Therefore, any confidential business, PII of any owners, and financial information pertaining to the Appellant in this appeal is inherently protected.

OHA decisions may be published without redactions on OHA's Web site. A decision may contain confidential business and financial information where that information is either decisionally-significant or otherwise necessary for a comprehensible decision. 13 C.F.R. § 134.205(f). The issue presented relates solely to the Appellant's eligibility for and possible debt forgiveness of a PPP loan. It does not appear that any decision issued in this matter would rely upon any confidential business, PII of any owners, and/or financial information of the Appellant contained in the AR. As such, if SBA chooses to publish any subsequent decision issued in this matter, redaction of the Appellant's confidential business, owners PII, and/or financial information is unnecessary. **If the decision issued in this matter contains confidential business, PII of the owners and financial information where that information is either decisionally-significant or otherwise necessary for a comprehensible decision & SBA chooses to publish the decision, said decision shall be redacted to exclude any confidential business, PII of the owners, and/or financial information of the Appellant prior to publishing the decision.**

On June 15, 2022, SBA moved to extend the close of record until August 19, 2022. By Order dated June 15, 2022, SBA was granted until August 19, 2022, to file a Response to the Petition.

On August 17, 2022, SBA moved to extend the close of record until September 2, 2022, to allow for the parties to consider the Amended Administrative Record and for SBA to file a more complete Response.  By Order dated August 18, 2022, SBA was granted until September 2, 2022, to file a Response to the Petition.

On September 2, 2022, SBA filed a Response to the Petition.

On October 11, 2022, the Appellant filed a Motion requesting leave to a Reply to address alleged inconsistencies and discrepancies in Appellant's Loan Forgiveness Application.  The Appellant attached its proposed Reply to the Motion.  By Order dated October 12, 2022, the Appellant's Motion was granted and the Reply, as set forth in the Motion requesting leave, was accepted as the Appellant's Reply.  The AR was closed on October 12, 2022.

## ISSUES

Whether the final SBA loan review decision contains clear error of law or fact to allow Appellant $6,672,100.00 in requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.      Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed.  PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes.

In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals.  15 U.S.C. § 636(a)(36)(D).  Subject to other PPP requirements, Sections B.1.d and B.1.g of the CARES Act permit the following types of business concerns to be eligible for PPP loans: 1) Certain eligible businesses owned by directors or shareholders of a PPP lender permitted to apply for a PPP loan through the lender with which they are associated; 2) A hospital owned by governmental entities; 3) Businesses that receive revenue from legal gaming; 4) Telephone & Electric cooperatives that are exempt from Federal income taxation under section 501(c)(12) of the Internal Revenue Code; 5) Housing cooperatives as defined in section 216(b) of the Internal Revenue Code; 6) Nonprofit and tax-exempt news organizations; 7) Destination marketing organizations; and 8) 501(c)(6) organizations.

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default.

Borrowers were permitted to apply for both an Economic Injury Disaster Loan and a PPP loan but could not utilize the loans for the same purpose.  15 U.S.C. § 636(a)(36)(Q).

As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments.  15 U.S.C. § 636(a)(36)(G).  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(A)(viii)(II).

## II.      PPP Loan Forgiveness

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities.  15 U.S.C. § 636(a)(36)(F).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures.  15 U.S.C. § 636m(e).  Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3).  Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. §636m(f).  In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).  15 U.S.C. § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs.  15 U.S.C. § 636m(d)(8).  The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses.  Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%.  15 U.S.C. § 636m(d)(2) and (d)(3).

The lender reviews the application and makes an initial decision regarding loan forgiveness.  15 U.S.C. § 636m(g).  Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower: 1) Was ineligible for a PPP loan; 2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses; 3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or, 4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. 13 C.F.R. §134.1201(b)(1)-(4).

The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[1]).

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1203.

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

On March 27, 2020, the CARES Act became law. P.L.116-136. On April 17, 2020, the Appellant submitted a PPP Borrower Application Form 2483, which reflects the Appellant is a 501(c)(3) non-profit entity with EIN **-***9432. (AR pp. 1477-1482 and 1465).

On April 28, 2020, the Appellant was approved for a PPP loan by the Lender in the amount of $6,672,100.00, and having executed a PPP Promissory Note received the loan proceeds on May 8, 2020. (AR pp. 20, 27-33, and 1485).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f). The Appellant submitted Form 3508EZ, along with some documentation and the required certification concerning the validity of expenses. (AR pp. 1483-1484).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b).

Next, the Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). On September 2, 2021, the Lender determined the Appellant should receive full loan forgiveness in the amount of $6,672,100.00. (AR pg. 20).

---

[1] SBA PPP lender notices are available from **SBA.gov** at https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. 13 C.F.R. § 134.1201(b)(2)&(3).

On September 9, 2021, SBA notified the Lender and Appellant it was reviewing the Appellant's PPP loan. (AR pp. 1466-1467).  On October 13 and 20, 2021, , SBA requested documentation concerning the PPP loan through the Lender. SBA specifically requested the Appellant provide an SS-4 for Venice Family Clinic and a copy of the principals, Elizabeth Forer, Social Security Card." SBA noted receipt of these records. (AR pp. 1468-1471).

The Appellant provided SBA with the following: operating agreement with UCLA, 2019 IRS Form 941s, State quarterly wage unemployment insurance tax reporting forms, 2019 3rd party payroll reports, and an explanation of Employer Identification Number (EIN) usage. The Appellant attached "Exhibits" with the following information: "Clinics, Administrative and Operation Sites"; "Staffing Titles/Positions"; "Executive Director" (named person with contact information); "Executive Director Job Description"; "Executive Director Compensation"; and "Disclosure of Litigation". (AR pp. 15 and 815-863).  The Appellant also provided SBA with evidence/documentation concerning the expenditure of PPP funds. (AR pp. 146-713).

On October 28, 2021, SBA notified the Lender and Appellant it would likely decline the forgiveness application.  SBA noted the 2019 IRS Forms 941 did not reflect the Appellant as the employer and requested 2019 IRS Forms that reflect the same. (AR pp. 1472-1476).

On February 16, 2022, SBA issued a final loan review decision providing the Appellant with $0.00 of PPP loan forgiveness, finding the Appellant "did not have any eligible payroll cost at the time of loan application."  SBA noted that the Appellant "was an ineligible recipient of the Paycheck Protection Program, due to the university (UCLA) being the employer of record for the leased employees to Venice Family Clinic. All tax documents are in the name of the university, Regents of the University of California. Therefore, the borrower has no eligible payroll.ineligible for a PPP loan. (AR pp. 20-21).

Throughout the Petition and in its Reply, the Appellant argues that: (1) It had employees "employed on [an] other basis" under 15 U.S.C. § 636(a)(36), 13 C.F.R. 121.106 and SBA Size Policy Statement No. 1; 2) It applied "for the SBA loan in question very early in its initial offering stage in late March 2020"; (3) Under California law, the pertinent personnel would likely be found to be dual employed by VFC and UCLA; 4) The final SBA loan review decision contains errors of law and fact due to SBA's use of SBA FAQ #10; and 5) SBA FAQ #10 is inconsistent with existing SBA 7(a) business loan program rules and the CARES Act. (Petition of Appellant and Reply).

## SBA FAQ #10

The CARES Act contains the following definition: "(viii) the term `payroll costs'--``(I) means--`(aa) the sum of payments of any compensation with respect to employees that is a-`(AA) salary, wage, commission, or similar compensation; ..."

On April 2, 2020[2], SBA published Interim Final Rule (IFR) #1 on the United States Department of Treasury website[3] for the "implementation of sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act or the Act)." IFR #1 noted that Section 1102 of the CARES Act temporarily added a new product, titled the "Paycheck Protection Program," to SBA's 7(a) Loan Program. Pursuant to Section 1114 of the CARES Act, IFR #1 became immediately effective, without advance notice and public comment.

Within IFR #1, item 2(f) provides the following definition: "Payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wages, commissions, income, or net earnings from self-employment, or similar compensation."

SBA, in consultation with the Department of the Treasury, produced Frequently Asked Questions (FAQ) "to provide timely additional guidance to address borrower and lender questions concerning the implementation of the Paycheck Protection Program (PPP), including both First Draw PPP Loans and Second Draw PPP Loans." The FAQ document was noticed as one that would "be updated on a regular basis." Of note, the FAQ specifically stated that: "Borrowers and lenders may rely on the guidance provided in this document **as SBA's interpretation of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act)** (as amended), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act), and of the Paycheck Protection Program Interim Final Rules ("PPP Interim Final Rules")."[4] **(EMPHASIS added)**.

On April 6, 2020, SBA published FAQ #10 on the United States Department of Treasury website, which states:

---

[2] IFR #1 was published in the Federal Register on April 15, 2020. 85 Fed. Reg. 73, 20811-20817.
[3] https://home.treasury.gov/system/files/136/PPP--IFRN%20FINAL.pdf
[4] https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf

10. **Question**: What if an eligible borrower contracts with a third-party payer such as a payroll provider or a Professional Employer Organization (PEO) to process payroll and report payroll taxes?

**Answer**: SBA recognizes that eligible borrowers that use PEOs or similar payroll providers are required under some state registration laws to report wage and other data on the Employer Identification Number (EIN) of the PEO or other payroll provider. In these cases, payroll documentation provided by the payroll provider that indicates the amount of wages and payroll taxes reported to the IRS by the payroll provider for the borrower's employees will be considered acceptable PPP loan payroll documentation. Relevant information from a Schedule R (Form 941), Allocation Schedule for Aggregate Form 941 Filers, attached to the PEO's or other payroll provider's Form 941, Employer's Quarterly Federal Tax Return, should be used if it is available; otherwise, the eligible borrower should obtain a statement from the payroll provider documenting the amount of wages and payroll taxes. In addition, employees of the eligible borrower will not be considered employees of the eligible borrower's payroll provider or PEO.

The Appellant argues the final SBA loan review decision contains errors of law and fact due to SBA's use of SBA FAQ #10. The Appellant argues FAQ #10 is inconsistent with existing SBA 7(a) business loan program rules and the CARES Act, as follows:

1) The PPP statute specifically defines employees as including personnel "employed on [an] other basis,"; and
2) SBA policy on the factors to be considered in determining whether personnel are employees "employed on [an] other basis" has been long established via SBA Size Policy Statement No. 1. (*See* 51 Fed. Reg. 6099, Feb. 20, 1986). (Petition of Appellant).

This argument challenges to the validity of SBA's FAQ #10 through IFR #1, in which SBA concluded that for purposes of the PPP program, an employee is someone who gets paid to work for a person or company, and in the case of a PEO is confirmed with IRS Form 941-R (Form 941 or Schedule R). The Schedule R is meant to provide the IRS with client-specific information to support the totals reported on an aggregate Form 941 filed on behalf of the PEO's customer with the form containing the PEO customer's Employer Identification Number (EIN).

SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6). Section 7(A) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

The CARES Act amends Sections 7 and 7(A) of the Small Business Act to establish the PPP and PPP loan forgiveness. P.L. 116-36, § 1102; see also 15 U.S.C. § § 636(a)(36) and 636m. The CARES Act grants the Administrator emergency rulemaking authority and instructed the Administrator to issue regulations to carry out the Act within 15 days of March 27, 2020, along with the issuance of guidance and regulation to implement loan forgiveness within 30 days. 15 U.S.C. § 9012 and 15 U.S.C. § 9012; 15 U.S.C. § 636m(k).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(A) loans. 15 U.S.C. § 636(a)(36)(B).

The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of both first and second draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

Congress created SBA through the Small Business Act of July 30, 1953. SBA is under the general direction and supervision of the President and may not be affiliated with or be within any other agency or department of the Federal Government. The management of SBA is vested in an Administrator who shall be appointed from civilian life by the President, by and with the advice and consent of the Senate. The Administrator is authorized to appoint Associate Administrators (AA) to assist in the execution of the functions vested in the SBA. One such AA is the Chief Hearing Officer, who administers the Office of Hearings and Appeals (OHA). OHA was established to "impartially decide matters relating to program decisions of the Administrator". The AA of OHA is the Chief Hearing Officer and is responsible to the Administrator. The Chief Hearing Officer is responsible for the operation and management of OHA. Pub. L. 85–536 (July 18, 1958); as Amended through Pub. L. 117–6 (March 30, 2021); 15 U.S.C. § 631 et seq.; 72 Stat. 384 et seq.

OHA assigns all cases subject to the Administrative Procedure Act ("APA"), 5 U.S.C. 551 et seq., to an Administrative Law Judge ("ALJ") and assigns all other cases before OHA to either an ALJ or an Administrative Judge ("AJ"), or, if the AA of OHA is a duly licensed attorney, to himself or herself. Except as otherwise limited by regulation or by statute, an ALJ, AJ, and the AA has the authority to take all appropriate action to ensure the efficient, prompt, and fair determination of a case. This authority includes, but is not limited to, the authority to administer oaths and affirmations and to subpoena and examine witnesses. 13 C.F.R. § 134.218.

Docket No. PPP-6472417201

ALJs have no constitutionally based judicial power, *see Ramspeck v. Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them.  As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540- 41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert, denied,* 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 C.F.R. § 81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

ALJs do not exercise the broadly independent authority of an Article III judge, but rather operate as subordinate executive branch officials who perform quasi-judicial functions within their agencies. In that capacity, they owe the same allegiance to the Secretary's policies and regulations as any other Department employee.  The APA explicitly provides the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency: 5 U.S.C. § 556(c).

OHA ALJs are bound by SBA regulation and interpretation of its governing statutes and regulations.  OHA has consistently recognized such challenges as being improper and recognized the limited scope of its authority.  OHA has repeatedly held it "is not the proper forum for a challenge to the validity of a regulation." *Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. *See* 13 C.F.R. § 134.102."); *accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc.,* SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); *Nations Incorporated, Appellant re: Technical and Management Services Corporation*, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated authority."); *International Ordinance, Inc., Appellant*, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Appellant is beyond the limited jurisdiction of this Office.")

ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA's IFR #1, available at the time the Appellant applied for this PPP loan, as well as SBA's interpretation that the CARES Act.  Section 1114 of the CARES Act waived the notice and comment requirement for Interim Final Rules, thus IFR #1 has the force and effect of a Final Rule and Regulation. *See* 5 U.S.C. § 553; "A Guide to the Rulemaking Process", p. 8.  Therefore, the CARES Act placed the PPP within the SBA 7(a) Loan Program.  For the foregoing reasons, OHA and the undersigned are without authority to invalidate SBA's IFR #1 or its interpretation of the CARES Act through FAQ #10 in defining payroll costs (and by default 'employee') for purpose of eligibility for PPP loans.

## SBA PPP Loan No. 6472417201

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1). SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106. Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. §553(b) (15 U.S.C. § 9012).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B). The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of both first and second draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J). In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). PPP loan forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. §636m(f). The Lender reviews the PPP loan forgiveness application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g).

Following issuance of an initial decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b).

Thus, the loan forgiveness process includes a dual SBA review of the Appellant's underlying qualification during the covered period for the amount of PPP loan received (loan eligibility) and documentation to support loan forgiveness.

In terms of loan eligibility, the AR reflects the Appellant is a 501(c)(3) non-profit entity. Following the issuance of IFR #4[5], in consultation with the Department of the Treasury, produced "How to Calculate Maximum Loan Amount - By Business Type" to "guidance to assist businesses in calculating their payroll costs for purposes of determining the amount of a Paycheck Protection Program (PPP) loan businesses can apply for." SBA stated that this guidance is "SBA's interpretation of the CARES Act and of the Paycheck Protection Program Interim Final Rules."[6] Within this guidance, SBA Q&A #6 sets forth how a 501(c)(3) non-profit entity calculates its PPP loan eligibility amount, as follows:

**6. Question**: How is the maximum PPP loan amount calculated for eligible nonprofit organizations[7] (up to $10 million)? (Note that PPP loan forgiveness amounts will depend, in part, on the total amount spent during the 24-week period following the first disbursement of the PPP loan.)

**Answer**: The following methodology should be used to calculate the maximum amount that can be borrowed for eligible nonprofit organizations (eligible nonprofit religious institutions, see the next question):

• Step 1: Compute 2019 payroll costs by adding the following:

o 2019 gross wages and tips paid to your employees whose principal place of residence is in the United States, which can be computed using 2019 IRS Form 941 Taxable Medicare wages & tips (line 5c-column 1) from each quarter plus any pre-tax employee contributions for health insurance or other fringe benefits excluded from Taxable Medicare wages & tips, subtracting any amounts paid to any individual employee in excess of $100,000 and any amounts paid to any employee whose principal place of residence is outside the U.S;

o 2019 employer health insurance contributions (portion of IRS Form 990 Part IX line 9 attributable to health insurance);

---

[5] IFR #4 was published April 24, 2020.
[6] https://home.treasury.gov/system/files/136/How-to-Calculate-Loan-Amounts.pdf
[7] SBA defined "Eligible nonprofit organization" as "an organization that is described in section 501(c)(3) of the Internal Revenue Code of 1986 and that is exempt from taxation under section 501(a) of such Code."

o 2019 employer retirement contributions (IRS Form 990 Part IX line 8); and

o 2019 employer state and local taxes assessed on employee compensation, primarily state unemployment insurance tax (from state quarterly wage reporting forms).

• Step 2: Calculate the average monthly payroll costs (divide the amount from Step 1 by 12).

• Step 3: Multiply the average monthly payroll costs from Step 2 by 2.5.

• Step 4: Add the outstanding amount of any EIDL made between January 31, 2020 and April 3, 2020 that you seek to refinance, less the amount of any advance under an EIDL COVID-19 loan (because it does not have to be repaid).

The nonprofit organization's 2019 IRS Form 941 and state quarterly wage unemployment insurance tax reporting form from each quarter (or equivalent payroll processor records or IRS Wage and Tax Statements), along with the filed IRS Form 990 Part IX or other documentation of any retirement and health insurance contributions, must be provided to substantiate the applied-for PPP loan amount. A payroll statement or similar documentation from the pay period that covered February 15, 2020 must be provided to establish you were in operation and had employees on that date. Eligible nonprofits that do not file an IRS Form 990, typically those with gross receipts less than $50,000, should see the next question.

For this Appellant, 2019 payroll costs begin with determining this Appellant's direct employees gross wages and tips from IRS Forms 941 (line 5c-column 1). The AR does not contain 2019 IRS Forms 941 from this Appellant. The AR contains 2019 IRS Forms 941 from the "Regents of the University of California" with a 2019 four quarter total from line 5c-column 1 of $ 6,541,254,776.80. (AR pp. 34-43). Pursuant to Q&A #6, the Appellant has failed to document any PPP eligible wages and tips for its employees.

The Appellant argues that its 2019 wages and tips are reflected in the Regents of the University of California's 2019 IRS Forms 941. The Appellant's argument would render the Regents of the University of California as the Appellant's PEO and place examination of the Appellant's PPP loan eligibility under FAQ #10.

The Appellant provides a letter from the University of California, Executive Vice President – Chief Financial Officer dated August 15, 2022, which states "it would be appropriate under the circumstances for UC to include VFC's payroll information on UC's Form 941, Schedule R." (Reply – "Attach 2 to Motion" pg. 3). Through this letter, the Appellant seeks to utilize already submitted 3rd party payroll documentation as an alternative means to establish the Appellant's 2019 wages and tips under Q&A #6.

The AR also contains a letter from the University of California, Executive Vice President – Chief Financial Officer dated October 7, 2022. In this correspondence, the Appellant was advised that beginning in tax year 2023, the Regents of the University of California would include the Appellant its IRS Form 941, Schedule R. The correspondence further states:

"With respect to retroactive filing of additional or amended Forms 941R for tax years 2020, 2021, and 2022, the matter remains under review. Although, for the reasons stated above and in the attached letter, the UC could have filed a Form 941R including VFC in those periods, we are not yet certain of all the administrative implications and impacts of retroactive filing or amendment at this point. If retroactive filing or amendment is feasible and will not entail costly additional filings or impacts, we are happy to work with VFC to proceed with doing so." As such, the Regents of the University of California have not included the Appellant on its IRF Form 941, Schedule R for tax years 2019, 2020, 2021 or 2022. (Reply – "Attach 2 to Motion" pg. 2).

Accepting the Appellant's argument that the Regents of the University of California are the Appellant's PEO, pursuant to FAQ #10, the Appellant has failed to document its listing on the Regents of the University of California IRS Form 941, Schedule R. In the absence of the same, the Appellant cannot provide an "Allocation Schedule" for itself from the Regents of the University of California (an aggregate Form 941 filer).

Given this absence, the Appellant seeks, under FAQ #10, to use a statement from its 3rd party payroll provider to document the amount of wages and payroll taxes attributable to the Appellant on the Regents of the University of California's 2019 IRS Forms 941. This interpretation of FAQ #10 is inconsistent with plain language of FAQ #10. SBA will allow a PPP applicant/borrower to seek 3rd party payroll documentation only when the applicant/borrower appears on the PEOs IRS Form 941, Schedule R and cannot obtain an "Allocation Schedule". As noted above, the Appellant does not appear on the purported PEO's 2019 IRS Form 941, Schedule R and the purported PEO has specifically declined to add the Appellant to the same. As such, the Appellant has failed to document PPP payroll costs through its purported PEO.

Pursuant to 13 C.F.R. § 134.1201(b)(1)-(4), SBA is obligated to review the entirety of a PPP borrowers loan application, approval, and forgiveness request. The PPP Loan Forgiveness Application Form 3508 signed by the Appellant notes the Appellant may be required to provide "Other Records" that are "necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements."

Here, the Appellant has failed to supply SBA with the documentation necessary to support this PPP loan under the applicable Q&A #6 and/or FAQ #10. The Appellant was obligated to provide the information requested by SBA pursuant to 15 U.S.C. § 636m(b), (e), and (f). Given the foregoing, SBA issued a final loan review decision precluding PPP loan eligibility. The AR reflects this Appellant did not have PPP qualifying payroll costs (no employee wages or tips). In the absence of the Appellant meeting it's documentary obligation under Q&A #6 and/or FAQ #10, the final SBA loan review decision could only result in a full denial PPP loan eligibility. SBA did not commit error in finding the same.

In terms of loan forgiveness, SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).  As the Appellant is ineligible for the PPP loan at issue, the Appellant may not receive loan forgiveness.  SBA did not commit error in denying loan forgiveness.

The final SBA loan review decision is well supported by the record and devoid of any clear error of law or fact.  As such, the final SBA loan review decision is **AFFIRMED**.

## CONCLUSION OF LAW

The Appellant was ineligible for PPP Loan Number 6472417201. The Appellant is ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law. The Appellant remains liable for the PPP Loan Number 6472417201.

## ORDER

For the reasons discussed above, this appeal petition is **DENIED**.  The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decision.  I direct SBA to process the loan forgiveness request in accordance with this decision.

**If the decision issued in this matter contains confidential business, PII of the owners and financial information where that information is either decisionally-significant or otherwise necessary for a comprehensible decision & SBA chooses to publish the decision, said decision shall be redacted to exclude any confidential business, PII of the owners, and/or financial information of the Appellant prior to publishing the decision.**

SO ORDERED.

_____
**Brian J. Haring**
U.S. Administrative Law Judge

## NOTICE OF APPEAL RIGHTS AND PROCEDURES

Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. 13 C.F.R. § 1211(c)(1).  The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(c)(2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d).  The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3).  Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).